1

2

3                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  SHADI BISHARA, an          )  Case No. EDCV 09-01745-VAP
    individual dba HAVANA      )  (JCx)
12  SPORT BAR AND GRILL,       )
                               )  **ORDER GRANTING DEFENDANT'S**
13              Plaintiff,     )  **MOTION FOR SUMMARY JUDGMENT**
                               )
14      v.                     )
                               )
15  CENTURY SURETY COMPANY;    )
    CENTURY INSURANCE GROUP;   )
16  PROCENTURY CORPORATION,    )
    and DOES 1 to 30,          )
17  Inclusive,                 )
                               )
18              Defendants.    )
    _____)
19

20       Before the Court is a Motion for Summary Judgment

21  ("Motion") filed by Defendant Century Surety Company

22  ("Defendant").  After consideration of the papers in

23  support of, and in opposition to, the Motion, the Court

24  GRANTS Defendant's Motion.

25

26              **I.  PROCEDURAL HISTORY**

27       On August 11, 2009, Plaintiff "Shadi Bishara d.b.a.

28  Havana Sport [sic] Bar and Grill" ("Bishara" or

"Plaintiff") filed a Complaint ("Complaint") in the
California Superior Court for the County of San
Bernardino, asserting claims for (1) declaratory relief;
(2) breach of contract, (3) bad faith denial of an
insurance claim, and (4) breach of the implied covenant
of good faith and fair dealing, arising out of an
insurance coverage dispute.  (<u>See</u> Doc. No. 1 (Not. of
Removal), Ex. A.)  On September 14, 2009, Defendant
removed the action to this Court on the basis of the
Court's diversity jurisdiction.  (<u>See</u> <u>id.</u>, ¶ 3.)

    On December 17, 2010, Defendant filed its Motion for
Summary Judgment for Partial Summary Judgment.  (Doc. No.
19.)  In support of its Motion, Defendant attached the
following documents and exhibits:

    1.  Statement of Uncontroverted Facts ("SUF");

    2.  Declaration of H. Douglas Galt ("Galt
        Declaration");

    3.  Declaration of Michael C. Phillips ("Phillips
        Declaration");

    4.  Declaration of Rande L. Kaufman ("Kaufman
        Declaration");

    5.  Contract for Sale of Personal Property ("Ex.
        1");

1       6.  Articles of Incorporation for Havanas Inc.[1] ("Ex.
2           2");

3       7.  Statement of Information (Havanas Inc.) ("Ex.
4           3");

5       8.  Application for Seller's Permit (Havanas Inc.)
6           ("Ex. 4");

7       9.  Rialto Fire Department Report ("FIR");

8      10.  Advanced Analysis, Inc., Report ("Ex. 6");

9      11.  Commercial Insurance Application on ACORD Form
10          128 ("Ex. 7" or "ACORD Form");

11     12.  Century Surety Group Liquor Liability
12          Application ("Ex. 8" or "LLA");

13     13.  Restaurant/Bar/Tavern/Nightclub Supplemental
14          Questionnaire ("Ex. 9" or "Supplemental
15          Questionnaire");

16     14.  Century Surety Co., Policy No. CCP 55947 ("Ex.
17          10" or "Policy");

18     15.  Sworn Proof of Loss from October 5, 2008, Fire[2]
19     16.  November 14, 2007, Richdon Metals Invoices ("Ex.
20          12");

21  _____

22     [1]  The parties' references to "Havanas" are
inconsistent, and alternate between "Havana," "Havanas,"
23  "Havana's," and "Havanas'."  Accordingly, where the Court
refers to a document, the spelling used is the spelling
24  from the referenced document.

25     [2] Defendant inadvertently attached the wrong proof of
loss as Exhibit 11.  The attached proof of loss is dated
26  May 2, 2006, and pertains to the theft of car and home
audio equipment from a different address.  Accordingly,
27  on January 31, 2011, Defendant filed a notice of errata
attaching the proper Proof of Loss ("Ex. 11.").  (See
28  Doc. No. 27 (Not. of Errata re: Ex. 11), at 1-2.)

17. January 12, 2010, letter to Mr. Witsoe, attorney for Bishara ("Ex. 13");

18. July 21, 2010, letter to Bishara ("Ex. 14");

19. July 21, 2010, letter to Havana's Inc. ("Ex. 15");

20. Deposition of Ashraf Swidan given in <u>Swidan v. Allied Insurance Company</u> on September 23, 2008 ("Swidan Dep.");

21. Ashraf Swidan Examination under Oath given on December 4, 2009 ("Swidan EUO");

22. Shadi Bishara Examination under Oath given on April 9, 2009 ("Bishara April EUO");

23. Shadi Bishara Examination under Oath given on December 4, 2009 ("Bishara December EUO"); and

24. April 2, 2010, Deposition of Richard Ragsdale ("Ragsdale Dep.")

On February 10, 2011, by stipulation of the parties, the Court permitted Plaintiff to file an Opposition by March 7, 2011, and Defendant to file a Reply no later than March 14, 2011. (Doc. No. 31.) On March 7, 2011, Plaintiff filed his Opposition. (Doc. No. 35.) In support of his Opposition, Plaintiff submitted the following documents and exhibits:

1. "Statement of Response to Uncontroverted Facts" ("SGI");

4

2.   Declaration of Shadi Bishara ("Bishara Declaration");

3.   Declaration of D. Scott Mohney ("Mohney Declaration");

4.   Century Surety Group Liquor Liability Application;[3]

5.   Restaurant/Bar/Tavern/Nightclub Supplemental Questionnaire;[4]

6.   Page 4 of the ACORD Form, bearing Bates label CS 02557;[5]

7.   Notice of Cancellation, dated November 26, 2008 ("Ex. D"); and

8.   Page 50 of the Swidan EOU.

On March 14, 2011, Defendant filed its Reply.  (Doc. No. 37.)

## II.   LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party must show

---

[3] Included as Defendant's Ex. 8.

[4] Included as Defendant's Ex. 9.

[5] The ACORD Form Plaintiff attaches is also included as page 5 of Defendant's Ex. 7.

that "under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case.  <u>Id.</u>

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all

matters placed in issue by the motion as to which it has the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252; <u>see</u> <u>also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence." <u>In re Oracle Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Anderson</u>, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." <u>In re Oracle</u>, 627 F.3d at 387 (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

   A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III.   FACTS

**A.   Uncontroverted Facts**

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of Defendant's Motion.[6]  <u>See</u> L.R. 56-3.

**1.   Havana's Sports Bar and Restaurant**

Havana's Sports Bar and Restaurant ("Restaurant") was owned by Ashraf Swidan ("Swidan") since late 2005. (Swidan Dep. 13:6-21; Swidan EUO 21:8-9.)  Swidan held a Liquor License, number 434322, in his own name.  (SUF ¶ 2; SGI ¶ 2.)  From late 2005 until at least October 5, 2008, the Restaurant operated under the Liquor License. (SUF ¶ 3; SGI ¶ 3.)

In a contract dated October 1, 2007, Swidan agreed to sell the Restaurant to Plaintiff for $150,000.00. (Bishara April EUO 27:25-28:5; Swidan EUO 43:24-45:2; Ex. 1; SUF ¶ 4; SGI ¶ 4.)  Under the terms of the contract, Plaintiff was required to make two payments of $75,000.00 each; Plaintiff made the first payment of $75,000.00 to Swidan in cash.  (SUF ¶ 5; SGI ¶ 5.)  Swidan did not give

---

[6]To the extent any proposed uncontroverted facts are not mentioned here, the Court has not relied on them in reaching its decision.  The Court independently has considered the admissibility of the evidence underlying the SUF, and has not considered irrelevant or inadmissible evidence.

Plaintiff a receipt for the cash, and neither Plaintiff nor Swidan have written records evidencing the cash transaction. (SUF ¶ 5; SGI ¶ 5.) The parties dispute whether Plaintiff paid the remaining $75,000.00 he owed Swidan under the sale contract. (See Section III.B., infra.) Nevertheless, the uncontroverted evidence demonstrates that at the time of the October 5, 2008, fire, Plaintiff had not paid Swidan the second $75,000.00 he owed under the sale contract. (Swidan EOU 50:10-13.)

In approximately January or February 2008, a person broke into the Restaurant, poured gasoline on the floor, and ignited a fire. (Bishara April EUO 92:4-21; SUF ¶ 7; SGI ¶ 8.) In June or July 2008, another person broke into the Restaurant and stole a plasma television. (SUF ¶ 8; SGI ¶ 8.) When the arson and the burglary occurred, the Restaurant was not insured. (SUF ¶ 9; SGI ¶ 9.)

### 2. Havanas Inc.

On March 18, 2008, the California Secretary of State filed the Articles of Incorporation for "Havanas Inc.," ("Havanas") which listed Swidan as the agent for service of process. (Swidan EUO 37:20-25; Ex. 2; SUF ¶ 11; SGI ¶ 11.) On April 17, 2008, the California Secretary of State filed a "Statement of Information," which listed Plaintiff as the Secretary of Havanas and Swidan as the

Chief Executive Officer and Chief Financial Officer.
(SUF ¶ 11; SGI ¶ 11.)

On April 22, 2008, the State of California Board of
Equalization processed an Application for Seller's
Permit, which identified the applicant as Havanas and
stated sales would begin on May 1, 2008.  (SUF ¶ 12; SGI
¶ 12; Ex. 4.)  The Application for Seller's Permit
identifies Swidan as the President, and Plaintiff as the
Secretary.  (Ex. 4.)  The Application for Seller's Permit
contains a "Certification" portion, which requires the
names and signatures of "All Corporate Officers, LLC
Managing Members, Partners, or Owners."  (Id.)  Both
Swidan and Bishara are listed as signatories in the
Certification portion.  (Ex. 4 at 2.)

Plaintiff and Swidan testified under oath that
Havanas was formed for the purpose of holding the
Restaurant's assets.  (SUF ¶ 13; SGI ¶ 13.)  Although the
Restaurant operated under Havanas' Seller's Permit issued
on April 22, 2008, the lease, Liquor License, and other
assets of the Restaurant were never transferred to either
Havanas or Plaintiff.  (SUF ¶ 13; SGI ¶ 13.)

In September 2008, and through the time of the fire,
Swidan worked  four to five days a week at the
Restaurant, helping to manage it.  (SUF ¶ 14; SGI ¶ 14;

1   Swidan Dep. 22:12-17; Swidan EUO 74:6-75:14.)   Swidan

2   also holds between twenty and fifty percent of Havanas's

3   stock.[7]

4

5       **3.   The Insurance Policy**

6       From the time Swidan began running the Restaurant in

7   late 2005 until July 2008, it was uninsured.  (Swidan

8   Dep. 13:6-21; Swidan EUO 21:8-9, 59:6-18.)  On August 7,

9   2008, Defendant received an application for insurance

10  ("Insurance Application") to cover the Restaurant.  (SUF

11  ¶ 23; SGI ¶ 23.)   The Insurance Application consisted of:

12  (1) the ACORD Form; (2) a Liquor Liability Application

13  ("LLA"); and (3) a Restaurant/Bar/Tavern/Nightclub

14  Supplemental Questionnaire ("Supplemental

15  Questionnaire").  (SUF ¶ 23; SGI ¶ 23.)

16

17      The ACORD Form, dated August 7, 2008, lists the

18  applicant as "Havanas."  (Ex. 7.)  A separate page of the

19  ACORD Form, however, lists the applicant as "Shadi N

20  Bishara dba Havanas Bar."  (Id. at 270; SUF ¶ 24; SGI ¶

21  24.)  In response to question 18 on the ACORD Form,

22  asking: "have any crimes occurred or been attempted on

23

24

25  _____

        [7]   The percentage of Havana's Swidan owns is unclear.
26  Plaintiff asserts Swidan owns 50%; Swidan's testimony,
    however, indicates he owns 20%.  (Compare Bishara's April
27  EUO 32:13-18 with Swidan Dep. 14:5-10.)  Nevertheless, it
    is undisputed that Swidan owned a portion of Havana's
28  stock.

1  your premises within the last three years," The box

2  marked "no" is checked. (Id. at 269; SUF ¶ 27; SGI ¶ 27.)

3

4      The LLA, dated August 7, 2008, asks for the "Name of

5  Applicant (include dba)." (Ex. 8; SUF ¶ 24; SGI ¶ 24.)

6  The applicant listed is "Shadi N Bishara / Havana Bar &

7  Restaurant." (Ex. 8.)  The LLA describes the applicant

8  as a "corporation." (Id.)  Question 21 on the LLA form

9  asks for the "liquor liability insurer(s) for past three

10 (3) years;" the phrase "new adventure" (sic) is the hand-

11 written response. (Id.)

12

13     The Supplemental Questionnaire lists the "insured" as

14 "Shadi N Bishara / Havana Bar & Restaurant." (Ex. 9.)

15 The Supplemental Questionnaire asks for the "number of

16 years this business has been in operation"; the response

17 is "new." (Id.; SUF ¶ 26; SGI ¶ 26.)  Similarly, the

18 Supplemental Questionnaire asks for the financial

19 information for the past three years; the response is

20 "new." (Id.)

21

22     In reliance on the Insurance Application, including

23 the ACORD Form, LLA, and Supplemental Questionnaire,

24 Defendant issued insurance policy number CCP 559467

25 ("Policy"), for the period of August 7, 2008, through

26 August 7, 2009. (SUF ¶ 28; SGI ¶ 28.)  The Policy lists

27 the named insured as "Havana's Sports Bar & Restaurant,"

28

1  and describes the business as an "Organization (Other

2  than Partnership, LLC or Joint Venture)."  (Ex. 10; SUF ¶

3  29; SGI ¶ 29).  Plaintiff's name does not appear anywhere

4  in the Policy or the Policy's declarations page.  (SUF ¶

5  30.)[8]

6

7      Under the Policy, Defendant agrees to "pay for direct

8  physical loss of or damage to Covered Property at the

9  premises described in the Declarations caused by or

10  resulting from any Covered Cause of Loss."  (Policy at

11  334.)  Under "Causes of Loss - Special Form," the Policy

12  excludes

13          loss or damage caused by or resulting from .
            . . [a] [d]ishonest or criminal act by you,
14      any of your partners, members, officers,
        managers, employees (including leased
15      employees), directors, trustees, authorized
        representatives or anyone to whom you entrust
16      the property for any purpose: (1) Acting alone
        or in collusion with others; or (2) Whether or
17      not during the hours of employment.

18          This exclusion does not apply to acts of
        destruction by your employees (including
19      leased employees); but theft by employees
        (including leased employees) is not covered.
20

21  (Policy at 351-52.)

22

23

24

25      _____

        [8] Plaintiff disputes this fact, contending his name
26  appears repeatedly in the Insurance Application.  (SGI ¶
    30.)  Whether or not Plaintiff's name appears in the
27  Insurance Application does not controvert whether his
    name appears in the Policy itself.  Accordingly, the
28  Court deems this fact admitted without controversy.

1        The Policy also provides that the coverage

2    is void in any case of fraud by you as it
     relates to this Coverage Part at any time.  It

3    is also void if you or any other insured, at
     any    time,    intentionally    conceal    or

4    misrepresent a material fact concerning:
                1.   This Coverage Part;

5               2.   The Covered Property;
                3.   Your    interest    in    the    Covered

6                    Property; or
                4.   A claim under this Coverage Part.

7
(Policy at 331.)

8

9        **4.   The October 5, 2008, Fire**

10       On October 5, 2008, Plaintiff left the

11   restaurant at about 2:15 a.m.  (SUF ¶ 15; SGI ¶ 15.)

12   Between 2:25 a.m. and 2:50 a.m., Swidan set the alarm

13   to the Restaurant and left the building.  (Swidan EUO

14   79:24-81:16; FIR at 15; SUF ¶ 15; SGI ¶ 15.)  At the

15   time Plaintiff left the building, all of the

16   Restaurant's windows and doors were closed and

17   locked.  (Bishara's April EUO 100:11-23; SUF ¶ 15;

18   SGI ¶ 15.)

19

20       According to the Rialto Fire Department's Fire

21   Investigation Report, at 2:50 a.m., six minutes after

22   Swidan left the Restaurant, a motion detector inside

23   the Restaurant was set off; a second motion detector

24   was set off four minutes later, at 2:54 a.m.  (SUF ¶

25   17; SGI ¶ 17; FIR at 15.)[9]  The fire was reported at

26

27   ───────────────
         [9]  The FIR does not contain independent page numbers.

28                                      (continued...)

                              14

3:17 a.m.  (FIR at 15.)  The Rialto Fire Department
responded to the fire at 3:27 a.m., and found all of
the doors and windows locked and secured when they
arrived.  (SUF ¶ 19; SGI ¶ 19; FIR at 37-38.)

     The Rialto Fire Department investigated the
fire, and concluded that Swidan intentionally set
fire to the inside of the Restaurant.  (SUF ¶ 21; SGI
¶ 21; FIR at 41.)  The Rialto Fire Department based
its conclusion on, inter alia:

     1.   Swidan was the last person seen leaving the
          building on October 5, 2008; ten minutes
          after he leaves, smoke is seen coming from
          inside the building;

     2.   No one was seen entering the building on
          video surveillance cameras after Swidan left
          the building, and the Rialto Fire Department
          found no indications that someone tried to
          force open the doors or windows; and

     3.   All accidental and natural ignition sources
          were ruled out.

(FIR at 41.)

_____

     [9](...continued)
Accordingly, for ease of reference, the Court cites to
the continuous page number on the bottom right-hand
corner of Defendant's exhibits.

1    Advanced Analysis, Inc., a private investigation

2 company Defendant hired, reached a similar

3 conclusion, finding "that [Plaintiff] and Joe Swidan

4 conspired and intentionally set fire to the

5 [Restaurant]." (SUF ¶ 20; Ex. 6 at 31; Kaufman Decl.

6 ¶ 8.)[10]

7

8       **5.   Claim for Coverage**

9    On an unspecified date, Plaintiff submitted a

10 claim for coverage ("Coverage Claim") as a result of

11 the fire. (SUF ¶ 34; SGI ¶ 34; Ex. 11.) As part of

12 Plaintiff's Coverage Claim, Plaintiff represented

13 that at the time of the loss, no one other than

14 Plaintiff had an interest in the property. (SUF ¶

15 34; SGI ¶ 34; Ex. 11.)

16

17    To support the amount Plaintiff requested in his

18 Coverage Claim, he submitted two invoices to

19 Defendant from Richdon Metals, dated November 14,

20 _____

21    [10] Plaintiff disputes this fact, contending that he
did not intentionally set fire to the Restaurant. (SGI ¶
22 20.) In support of this contention, Plaintiff submits
his declaration stating that he was not involved in the
23 fire. (Bishara Decl. ¶ 6.) Whether Plaintiff was
actually involved in setting the fire is a distinct
24 question from whether Advanced Analysis, Inc., reached a
conclusion that Plaintiff was involved in the fire.
25 Plaintiff offers no evidence controverting Defendant's
adequately-supported fact that Advanced Analysis, Inc.,
26 reached the conclusion that Plaintiff was involved in the
fire. Accordingly, the Court deems the fact admitted
27 without controversy. <u>See</u> L.R. 56-3. To be clear, the
Court does not reach the issue of whether Plaintiff was
28 involved in the fire.

2007.  (SUF ¶ 35.)[11]  The Richdon Metals documents appear to be invoices reflecting purchases made by "Havana's Sports Bar & Grill."  (Ex. 12.)  When deposed, Richard Ragsdale admitted he prepared the Richdon Metals invoices after the fire "so [Plaintiff] could have invoices to give to the insurance company for payment."  (Ragsdale Dep. 20:4-21:1.)  Mr. Ragsdale also stated that Plaintiff did not purchase the items on the invoices from Richdon Metals.  (Ragsdale Dep. 25:13-26:16.)

**B.  Disputed Facts**

The parties dispute whether Plaintiff was the sole owner of the Restaurant.  Defendant contends Plaintiff never paid Swidan the balance of $75,000.00 he owed under the Sale Contract.  (SUF ¶ 6; Bishara's April EOU 29:11-17.)  Plaintiff contends, however, that he paid Swidan in full.  (SGI ¶ 6; Swidan EOU 50:10-17, Bishara Decl. ¶ 3.)

The parties also dispute whether Plaintiff was a party to the Policy.  Defendant contends that because Plaintiff is not listed explicitly on the Policy, he

---

[11]  Plaintiff attempts to dispute this fact, contending "the documents were not 'invoices' but estimates re-created to show valuations of destroyed fixtures and equipment."  Plaintiff offers no evidence supporting his contention.  Accordingly, the Court deems the fact admitted without controversy.  <u>See</u> L.R. 56-3.

1   is not a party to it.  (See Ex. 10; SUF ¶ 29.)

2   Defendant contends further that the "Policy is a

3   contract between [Defendant] and Havana's Inc."

4   (Mot. at 7.)  According to Plaintiff, however, he is

5   a party to the Policy because his name is listed as

6   the applicant in the Insurance Application.  (See

7   Exs. 7-9; Opp'n at 7.)  Alternatively, Plaintiff

8   contends that if the entity insured under the Policy

9   was a corporation, then Plaintiff qualifies as an

10  insured.  (Opp'n at 7.)

11

12                    **IV. DISCUSSION**

13  **A.   Parties to the Insurance Contract**

14       On a motion for summary judgment, the Court

15  construes the evidence and all justifiable inferences

16  in the non-moving party's favor.  Eastman Kodak Co.

17  v. Image Tech. Servs., Inc., 504 U.S. 451 (1992);

18  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

19  Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  Here,

20  there exists a genuine dispute as to whether

21  Plaintiff is a party to the Policy.

22

23       Defendant contends that because the Policy lists

24  the named insured as "Havana's Sports Bar &

25  Restaurant," and describes the business as an

26  "Organization (Other than Partnership, LLC or Joint

27  Venture)," Plaintiff is not a Party to the Policy.

28

                              18

1 (Ex. 10; SUF ¶ 29; SGI ¶ 29). Defendant contends

2 further that Plaintiff lacks standing to bring his

3 claim because the Policy is a contract between

4 Defendant and Havana's Inc. (Mot. at 7.)

5

6     Plaintiff asserts, however, that he is a party

7 to the Policy because he is referred to as the

8 applicant in the Insurance Application documents.

9 (Opp'n at 7.) Plaintiff contends further that even

10 if the Policy is between Defendant and Havana's Inc.,

11 Plaintiff still has standing because he is an

12 "insured" under the Policy. (Id.)

13

14     Defendant first contends that because the Policy

15 lists the named insured as "Havana's Sports Bar &

16 Restaurant," and not Plaintiff, he has no standing to

17 bring a claim under the Policy. Here, it is unclear

18 which person or entity is insured under the Policy.

19

20     The Policy identifies the insured entity as

21 "Havana's **Sports** Bar & Restaurant." (Policy at 280.)

22 Although several of the parties' exhibits reference

23 "Havana's Bar & Restaurant," there are no documents

24 before the Court other than the Policy that provide

25 any evidence of "Havana's Sports Bar & Restaurant's"

26 corporate existence or its relationship to any of the

27 entities or parties in this action. Referring to

28

Plaintiff's Insurance Application does not clarify
which person or entity is the insured party, as:

- The ACORD Form lists "Shadi N Bishara dba Havanas Bar" as the applicant;
- The LLA lists "Shadi N Bishara / Havana Bar & Restaurant" as the applicant; and
- The Supplemental Questionnaire lists the "insured" as "Shadi N Bishara / Havana Bar & Restaurant."

(See Exs. 7-9.)  Notably, none of the Insurance
Application documents identify the purportedly-
insured entity, "Havana's **Sports** Bar & Restaurant,"
as the applicant to be insured.  (See id.)  Thus, as
there is no evidence indicating the involvement of,
or existence of an entity called "Havana's Sports Bar
& Restaurant," the insured party under the Policy is
unclear.

     Defendant contends further the insured is
"Havana's Inc.," and because Plaintiff is not the
named insured, he has no standing to bring a claim
under the Policy.  (Mot. at 7; Reply at 3.)  Here,
the evidence does not indicate clearly whether
"Havana's Inc." is the named insured.  There is
evidence supporting Defendant's contention that the
named insured was intended as "Havana's Inc."
Specifically,

- The Policy states that the named insured is
  an "Organization (Other than Partnership,
  LLC or Joint Venture)";
- The  ACORD Form lists the applicant as
  "Havanas"; and
- The LLA lists the applicant as a
  Corporation.

(See Exs. 7-9.)

There is, however, also evidence supporting
Plaintiff's contention that he was an insured under
the Policy.  Specifically, as stated above, the ACORD
Form and LLA include Plaintiff as the applicant, and
the Supplemental Questionnaire indicates Plaintiff is
the insured.  (See Exs. 7-9.) Indeed, the applicant
name on the ACORD Form is nearly identical to the
literal name of the Plaintiff here.  (Compare ACORD
Form at 270 (listing applicant as "Shadi N Bishara
dba Havanas Bar") with Compl. at 1 (listing the named
Plaintiff as "Shadi Bishara, an individual dba Havana
Sport Bar and Grill").)  Moreover, in the signature
block for the LLA and Supplemental Questionnaire, the
only applicant listed is "Shadi N. Bishara."[12]  (See
LLA at 274; Supp. Questionnaire at 277.)  There is no

---

[12] The signature block in the ACORD Form does not
contain an entry for the name of the applicant, but only
the applicant's signature.  (See ACORD Form at 266.)
Accordingly, the Court cannot discern who signed the
ACORD Form.

indication he signed the documents on behalf of a
corporate entity.

Drawing all justifiable inferences in
Plaintiff's favor, the Court finds that as the
Insurance Application includes numerous references to
Plaintiff, and as the Insurance Application documents
make no reference to "Havana's Sports Bar &
Restaurant," Plaintiff demonstrates sufficiently the
name on the Policy may be the result of a scrivener's
error, and therefore disputes sufficiently whether he
was a party to the Policy.

Finally, even if Defendant demonstrated
sufficiently that Plaintiff was not a named party to
the Policy, such a demonstration would not
necessarily bar Plaintiff from bringing a suit under
the Policy.  See Lighting Fixture & Elec. Supply Co.
v. Cont'l Ins. Co., 420 F.2d 1211, 1214-15 (5th Cir.
1969) ("[W]e believe that when an insurer and its
customer agree that the insurer is to insure the
owner of specified property against fire loss, it
would be no less unconscionable to allow the insurer
to avoid its obligation under their contract because
the owner, whose particular identity is of no
particular concern to the insurer, is incorrectly
named in that contract than to allow such avoidance

because the insurer in preparing the policy acted
unmindful of facts it either knew or should have
known."); <u>Gills v. Sun Ins. Office, Ltd.</u>, 238 Cal.
App. 2d 408, 413-14 (1965) (affirming trial court's
reformation and interpretation of insurance contract
where the trial court concluded the policy covered a
parcel of property, but specified the insured as an
entity that did not exist at the time the policy was
issued); <u>Capital Glenn Min. Co. v. Indus. Acc.
Comm'n</u>, 124 Cal. App. 79, 86 (1932) ("When an
insurance company, through its own fault, issues a
policy to an assured under a wrong name, and accepts
and retains premiums in payment therefor, it will be
estopped from denying that the real [party] was
insured by the terms of the policy . . . .").

    Accordingly, as Plaintiff offers evidence
sufficient to dispute whether he was a party to the
Policy, the Court finds Defendant's contention that
Plaintiff does not have standing because he was not a
Party to the Policy lacks merit.

**B.  Plaintiff's Declaratory Relief and Breach of
    Contract Claims**

    Defendant contends that Plaintiff cannot recover
on his declaratory relief and breach of contract
claims because Swidan's possible involvement in the

1    October 5, 2008, Fire barred coverage under the

2    Policy, thus making proper Defendant's decision to

3    deny Plaintiff's Coverage Claim.   (Mot. at 10.)

4    Under "Causes of Loss - Special Form," the Policy

5    excludes

> loss or damage caused by or resulting from .
> . . [a] [d]ishonest or criminal act by you,
> any of your partners, members, officers,
> managers, employees (including leased
> employees), directors, trustees, authorized
> representatives or anyone to whom you entrust
> the property for any purpose: (1) Acting alone
> or in collusion with others; or (2) Whether or
> not during the hours of employment.

(Policy at 351-52.)[13]


The uncontroverted evidence demonstrates the

Policy did not provide coverage for the October 5,

2008, Fire.   Here, Swidan was an employee of

Plaintiff, and thus any "dishonest or criminal act"

he committed that caused a loss or damage to the

Restaurant was not covered under the Policy.   (SUF ¶

14; SGI ¶ 14; Policy at 351.)

_____

[13]   The Policy continues, stating "[t]his exclusion
does not apply to acts of destruction by your employees
(including leased employees); but theft by employees
(including leased employees) is not covered."   (Policy at
352.)   Neither party addresses whether this provision is
applicable here.   Nevertheless, it appears the provision
is inapplicable here, as the alleged acts would, if true,
constitute a "criminal act," specifically arson.   See
Cal. Penal Code § 451 ("[a] person is guilty of arson
when he or she willfully and maliciously sets fire to or
burns or causes to be burned . . . any structure . . .
.");   People v. Morse, 116 Cal. App. 4th 1160 (2004) ("The
statute . . . requires only an intent to do the act that
causes the harm.").

The uncontroverted facts further establish that on the night of the October 5, 2008, Fire, Plaintiff left the restaurant at about 2:15 a.m. (SUF ¶ 15; SGI ¶ 15.) After Plaintiff left the Restaurant, at approximately 2:44 a.m., Swidan set the alarm to the Restaurant and left the building. (Swidan EUO 79:24-81:16; SUF ¶ 15; SGI ¶ 15.) At the time Plaintiff left the building, all of the Restaurant's windows and doors were closed and locked. (Bishara's April EUO 100:11-23; SUF ¶ 15; SGI ¶ 15.) At 2:50 a.m., six minutes after Swidan left the Restaurant, a motion detector inside the Restaurant went off; a second motion detector went off four minutes later, at 2:54 a.m. (SUF ¶ 17; SGI ¶ 17; FIR at 15.)[14] The Rialto Fire Department responded to the fire, and found all the doors and windows locked and secured when they arrived. (SUF ¶ 19; SGI ¶ 19; FIR at 37-38.)

The Rialto Fire Department investigated the fire, and concluded that Swidan intentionally set fire to the inside of the Restaurant. (SUF ¶ 21; SGI ¶ 21; FIR at 41.) The Rialto Fire Department based its conclusion on, inter alia, the following facts:

---

[14] The FIR does not contain independent page numbers. Accordingly, for ease of reference, the Court cites to the continuous page number on the bottom right-hand corner of Defendant's exhibits.

    1.  Swidan was the last person seen leaving the
        building on October 5, 2008; ten minutes
        after he leaves, smoke is seen coming from
        inside the building;

    2.  No one was seen entering the building on
        video surveillance cameras after Swidan left
        the building, and the Rialto Fire Department
        found no indications that someone tried to
        force open the doors or windows; and

    3.  All accidental and natural ignition sources
        were ruled out.

(FIR at 41.)  Advanced Analysis, Inc., a private
investigation company Defendant hired, also concluded
"that . . . Joe Swidan . . . intentionally set fire
to the [Restaurant]."  (SUF ¶ 20; Ex. 6 at 31;
Kaufman Decl. ¶ 8.)


    Thus, because the uncontroverted evidence
indicates Swidan intentionally set fire to the
Restaurant, Defendant has satisfied its burden of
establishing an absence of evidence that Defendant
denied Plaintiff's Coverage Claim improperly.


    To be clear, the Court does not opine or make
any findings as to whether Swidan actually set fire
to the Restaurant.  Rather, the Court finds only that
the uncontroverted evidence satisfies Defendant's

burden of demonstrating there is an absence of
evidence establishing Defendant breached the Policy
by refusing to approve Plaintiff's Coverage Claim.
As Defendant has satisfied its initial burden of
demonstrating an absence of evidence, the burden
shifts to Plaintiff to demonstrate that there is a
genuine issue of material fact that must be resolved
at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S.
at 324; Anderson, 477 U.S. at 256.

     Here, Plaintiff offers no testimonial or
documentary evidence demonstrating Swidan was not
involved in the October 5, 2008, fire.  Although
Plaintiff submits a declaration from Bishara denying
any involvement, Plaintiff offers no evidence
rebutting Defendant's evidence of Swidan's
involvement in the fire.  Accordingly, Plaintiff has
not satisfied his burden of demonstrating there is a
genuine issue of material fact as to whether
Defendant denied his Coverage Claim properly.  The
Court therefore GRANTS Defendant's Motion as to
Plaintiff's Declaratory Relief and Breach of Contract
claims.

**C.   Plaintiff's Bad Faith Denial of Coverage Claim**
     "California law is clear, that without a breach
of the insurance contract, there can be no breach of

1  the implied covenant of good faith and fair dealing."

2  <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519 F.3d

3  1025, 1034 (9th Cir. 2008); <u>see also</u> <u>Waller v. Truck</u>

4  <u>Ins. Exch.</u>, 11 Cal. 4th 1, 36 (1995) ("a bad faith

5  claim cannot be maintained unless policy benefits are

6  due is in accord with the policy in which the duty of

7  good faith is [firmly] rooted." (citing <u>Love v. Fire</u>

8  <u>Ins. Exch.</u>, 221 Cal. App. 3d 1136, 1153 (1990)).

9  Here, as discussed above, Plaintiff was not entitled

10 to coverage under the Policy; Defendant therefore did

11 not breach the Policy when it denied Plaintiff's

12 Coverage Claim.  Accordingly, as there were no

13 contractual benefits owed under the Policy, Plaintiff

14 cannot recover under his Second Claim for relief, bad

15 faith denial of coverage.

16

17      Moreover, even if Defendant owed Plaintiff

18 contractual benefits under the Policy, Plaintiff's

19 Second Claim for relief would still fail.

20          [U]nder California law, a plaintiff must show
           (1)  benefits  due  under  the  policy  were
21          withheld, and (2) the reason for withholding
           benefits  was  unreasonable  or  without  proper
22          cause. [citation] Because the key to a bad
           faith  claim  is  whether  denial  of  a  claim  was
23          reasonable,  a  bad  faith  claim  should  be
           dismissed on summary judgment if the defendant
24          demonstrates that there was 'a genuine dispute
           as to coverage.'
25
   <u>Feldman v. Allstate Ins. Co.</u>, 322 F.3d 660, 669 (9th
26
   Cir. 2003) (citing <u>Guebara v. Allstate Ins. Co.</u>, 237
27
   F.3d 987, 992 (9th Cir. 2001) (citing <u>Love</u>, 221 Cal.
28

1   App. 3d at 1151)).  Assuming Plaintiff could
2   demonstrate the benefits due under the policy were
3   withheld improperly, Plaintiff's Second Claim for
4   relief would still fail as there is a genuine dispute
5   as to the coverage for the October 5, 2008, Fire.

6

7        Here, Defendant's reliance on the Rialto Fire
8   Department and Advanced Analysis Reports was
9   reasonable.  Both reports examined thoroughly the
10  potential cause of the October 5, 2008, fire, and
11  reached detailed conclusions based on the extensive
12  investigations.  Additionally, both of the
13  investigations reached the same conclusion: Swidan
14  intentionally caused the October 5, 2008, fire.  (SUF
15  ¶ 20-21; SGI ¶ 21; FIR at 41; Ex. 6 at 31; Kaufman
16  Decl. ¶ 8.)  Moreover, although Defendant hired
17  Advanced Analysis, there is no evidence that it was
18  not independent; and, furthermore, there is no
19  evidence indicating that the Rialto Fire Department's
20  report, which echoed Advanced Analysis's report, is
21  biased.  (See Kaufman Decl. ¶ 8 (indicating Defendant
22  retained Advanced Analysis, Inc., to investigate the
23  October 5, 2008, fire).)

24

25       "[U]nder existing case law, a single, thorough
26  report by an independent expert is sufficient, all
27  other things being equal, to support application of
28

1    the 'genuine dispute' doctrine."  <u>Adams v. Allstate</u>
2    <u>Ins. Co.</u>, 187 F. Supp. 2d 1207, 1215 (C.D. Cal. 2002)
3    (citing <u>Chateau Chamberay Homeowners Ass'n v.</u>
4    <u>Associated Int'l Ins. Co.</u>, 90 Cal. App. 4th 335, 346
5    (2001)).  Accordingly, as Defendant's reliance on the
6    Rialto Fire Department's report is sufficient to
7    support application of the genuine dispute doctrine
8    here, Defendant's denial of Plaintiff's Coverage
9    Claim was reasonable as a matter of law.[15]

11        As Plaintiff cannot demonstrate that Defendant
12   withheld benefits due under the Policy or that the
13   reason for withholding benefits was unreasonable or
14   without proper cause, the Court GRANTS Defendant's
15   Motion as to Plaintiff's Bad Faith Denial of Coverage
16   Claim.

_____

[15]     Despite the exhaustive investigations and
detailed conclusions of both the Rialto Fire Department
and Advanced Analysis, Plaintiff nevertheless contends it
was unreasonable for Defendant to deny Plaintiff's claim
"when no charges or indictments [of Plaintiff or Swidan]
have been made by ay [sic] authority."  (Opp'n. at 14.)
Whether or not the District Attorney decided to file
criminal charges against Plaintiff or Swidan is of no
consequence in this civil suit filed by Plaintiff.  <u>See</u>
<u>Arneson v. Fox</u>, 28 Cal. 3d. 440, 455 (1980) ("Of course,
if acquitted, because of the difference in the burdens of
proof in a civil and criminal case, the acquittal would
be of no evidentiary benefit to him.").  Accordingly,
Plaintiff's argument lacks merit.

**D.   Plaintiff's Punitive Damages Request**

To prevail on a request for punitive damages, a plaintiff must establish: (1) that the insurer breached the policy, warranting contract damages; (2) that the insurer breached the implied covenant of good faith and fair dealing; and (3) that the breach constituted fraud, oppression, or malice warranting punitive damages under California Civil Code section 3294(a).  Griffin v. Northern Ins. Co., 176 Cal. App. 4th 172, 194-95 (2009).  Here, as discussed above, Plaintiff can not establish that Defendant breached the Policy, nor that he is entitled to damages for Defendant's purported bad faith denial of his Coverage Claim.  Accordingly, Plaintiff cannot demonstrate he is entitled to punitive damages under Civil Code section 3294(a).  The Court therefore GRANTS Defendant's Motion as to Plaintiff's Punitive Damages Claim.

**E.   Federal Rule of Civil Procedure 4(m)**

Defendant removed this action on September 14, 2009.  Plaintiff has not, however, filed proofs of service for Defendants Century Insurance Group or Procentury Corp.  Accordingly, the Court dismisses Plaintiff's Complaint against Defendants Century Insurance Group and Procentury Corp. for failure to prosecute.

31

1      **V.  CONCLUSION**

2      For the foregoing reasons, the Court:

3      1.   GRANTS Defendant's Motion;

4      2.   DISMISSES Plaintiff's Complaint against

5           Defendant Century Surety Corp. WITH

6           PREJUDICE; and

7      3.   DISMISSES Plaintiff's Complaint against

8           Defendants Century Insurance Group and

9           Procentury Corp WITHOUT PREJUDICE.

Dated:  _April 6, 2011_     _____
                            VIRGINIA A. PHILLIPS
                            United States District Judge